<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JIE SHAN and LESLIE ALLEN,<br><br>       *Plaintiffs,*<br><br>v.<br><br>UNITED AIRLINES; JOHN DOE I, CAPTAIN/PILOT; and JOHN DOES II-X, UNKNOWN PERSONS,<br><br>       *Defendants*. | Civil No. 21-cv-20357 (KSH) (JSA)<br><br><br><u>**OPINION**</u> |

**Katharine S. Hayden, U.S.D.J.**

**I.       Introduction**

      This matter arises from the alleged unlawful and discriminatory treatment of plaintiffs Jie Shan and Leslie Allen ("plaintiffs") during the boarding process of a United Airlines flight traveling to Miami from Newark Liberty International Airport.  Plaintiffs, who identify as Asian and Black, were ordered off the plane and banned from reboarding after a white passenger asked Shan to move from a window seat that was not assigned to her.  They assert claims against defendant United Airlines ("United") and various John Doe defendants for unlawful discrimination under 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.,* as well as common law claims for false imprisonment, intentional infliction of emotional distress, general negligence, and negligent hiring, training, supervision, and retention.

1

United has now moved to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (D.E. 5.) The motion is fully briefed, and the Court decides it without oral argument.

## II. Background

### a. Factual Background

The facts are gleaned from the complaint (D.E. 1). On December 12, 2019, plaintiff Shan—an Asian American woman of Chinese descent—and her husband, plaintiff Allen—a Black man of Jamaican descent—boarded a United flight from Newark to Miami and took their assigned seats in 24B (the middle seat) and 24C (the aisle seat). (Compl. ¶¶ 6, 9.) As the aircraft finished boarding, Shan noticed that no other passengers had occupied 24A (the window seat next to her) and decided to sit there to give her husband, who has several medical conditions, more room. (*Id.* ¶ 9.)

A few moments later, a white passenger approached and asked Shan if he could sit in seat 24A. (*Id.*) Although he did not show Shan a boarding pass indicating that he was assigned to that seat, she began gathering her belongings. (*Id.*) As Shan explained what had transpired to her husband, the passenger became "visibly frustrated and annoyed" as he tried to recount his version of events in English, which is not Shan's native language. (*Id.*) Although his demeanor unnerved plaintiffs, they "quietly complied" with his request without issue or instruction from United employees. (*Id.*)

Moments later, an individual who identified himself as an air marshal approached the aisle and asked if there was a problem, to which plaintiffs and their fellow passengers responded, "no." (*Id.* ¶ 10.) After the air marshal took his seat, the gate manager approached the aisle and asked plaintiffs directly if there was a problem:

>Gate manager: [I]s there a problem here?
>
>Shan: [H]e asked for the window seat, so I moved and gave him the seat.
>
>Gate manager: [O]kay, I just wanted to make sure there was no issue. If there is no issue here, then I can close the gate. I'm going to close the gate okay?

(*Id.*)

Minutes after the gate manager left the airplane, a Port Authority officer confronted plaintiffs. (*Id.* ¶ 11.) Although Shan explained what had transpired between her and the white passenger, the officer raised her voice and ordered plaintiffs to deboard the airplane, threatening that they would be arrested and barred from flying out of Newark airport in the future. (*Id.*) Several armed officers, one of whom appeared to be carrying a long-barreled rifle or machine gun, surrounded plaintiffs. (*Id.*) Once at the gate, plaintiffs were informed that the pilot had permanently removed them from the airplane to appease the white passenger, and that they would need to book another flight to Miami. (*Id.*)

Approximately one month later on January 16, 2020, United apologized to plaintiffs and offered to pay them monetary compensation, which they refused. (*Id.* ¶ 13.)

### b. Procedural History

On December 6, 2021, plaintiffs filed the instant action against United, a John Doe United pilot/captain, and other John Doe defendants who are alleged to be unknown United employees "involved in unlawfully removing [p]laintiffs from the flight[.]" (D.E. 1.) The complaint asserts claims for race discrimination in violation of 42 U.S.C. § 1981 against United only (count 1); race, color, national origin, and/or ancestry discrimination in violation of 49 U.S.C. § 40127(a) of the Federal Aviation Act (the "FAA") against United only (count 2); false imprisonment against all defendants (count 3); intentional infliction of emotional distress against all defendants (count 4); negligence under a "common carrier" theory against all defendants

(count 5); negligent hiring, training, supervision, and retention against United only (count 7)[1]; race discrimination in violation of the NJLAD, which appears to be asserted against all defendants (count 8); and a claim for equitable relief under the NJLAD, which also appears to be asserted against all defendants (count 9).

United has now moved (D.E. 5) to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), arguing that: (i) counts 1, 8, and 9 fail because plaintiffs have failed to allege a discrimination claim under 42 U.S.C. § 1981 or the NJLAD; (ii) there is no private right of action under the FAA's discrimination provision, necessitating dismissal of count 2; and (iii) counts 3 through 5 and 7 must be dismissed as preempted by the NJLAD or, alternatively, for failure to state a claim. (D.E. 5-1, Mov. Br.; D.E. 8, Reply Br.)  Plaintiffs oppose, arguing that all of their claims are sufficient to survive a Rule 12(b)(6) motion with the exception of count 2, conceding that there is no private right of action under the FAA's discrimination provision.[2]  (D.E. 7, Opp. Br.)

**III.    Analysis**

    **a. Standard of Review**

Under Fed. R. Civ. P. 8(a)(2), pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although the complaint need not include detailed factual allegations, it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)).  To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim

---

[1] The complaint erroneously skips count 6.  However, for consistency, the Court will refer to the negligent hiring, training, supervision, and retention claim as count 7.

[2] In light of this concession (Opp. Br. at 4, 13), count 2 is dismissed with prejudice.

4

to relief that is plausible on its face,'" meaning the plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570). The burden is on the movant to show that the plaintiff has not adequately pleaded its claims. *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.2d 261, 272 n. 14 (3d Cir. 2016).

### b. Plaintiffs' Statutory Claims (Counts 1, 8, and 9)

#### i. Race Discrimination in Violation of 42 U.S.C. § 1981 (Count 1)

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "To establish a right to relief under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in' § 1981[.]" *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 569 (3d Cir. 2002) (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)). The plaintiff must also plead that "but for race," he would "not have suffered the loss of a legally protected right." *Wright-Phillips v. United Airlines, Inc.*, 2021 WL 1221111, at *8 (D.N.J. Apr. 1, 2021) (McNulty, J.) (quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020)).

It is undisputed that the complaint satisfies the first and third elements, as plaintiffs allege that they are Asian and Black individuals (*see* Compl. ¶¶ 1, 6, 22) who have been deprived of the full and equal enjoyment "of all benefits, privileges, terms, and conditions" of their contractual relationship with United, which arose when they purchased their flight tickets (*see id.* ¶ 23).

United challenges only the second element, arguing that plaintiffs have failed to adequately allege any discriminatory intent. Plaintiffs are "not required to prove discriminatory intent at the motion to dismiss stage" and "'need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of [it],'" *Bagic v. Univ. of Pittsburgh*, 773 F. App'x 84, 87 (3d Cir. 2019) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). But their allegations fall short here.

The complaint alleges that plaintiffs were removed from their flight by a Port Authority officer, threatened with arrest, and surrounded by armed officers before being permanently banned from the flight by the United captain. (*See* Compl. ¶ 11.) The facts as alleged by plaintiffs, which are taken as true for purposes of this motion, reveal no explanation for this treatment. The complaint alleges a colloquy between plaintiffs and their fellow passenger which, given the alleged language barrier, unnerved plaintiffs and caused the passenger to grow "visibly frustrated and annoyed." (*Id.* ¶ 9.) Plaintiffs further allege that they "quietly complied" with the passenger's request "without issue" (*id.*) and informed three separate personnel that the situation was under control.

However, the complaint is devoid of facts which would allow the Court to infer discriminatory animus by United motivated their removal. Plaintiffs allege the air marshal, gate manager, and Port Authority officer approached them after the passenger took his seat and addressed them in an unnerving and/or hostile manner. However, there is no specific allegation that any *United employee* did so; in fact, plaintiffs allege that they complied with their co-passenger's request without instruction from United.³ While the complaint includes a conclusory

---

³ Although plaintiffs generally reference United "employees and/or agents" throughout the complaint (*see id.* ¶ 8), they do not specifically allege that the air marshal, gate manager, Port

allegation that John Doe United flight attendants were "involved in unlawfully removing [p]laintiffs from the flight" (*id.* ¶ 2), it is bereft of any allegation describing that involvement— *i.e.*, any specific statements to plaintiffs and/or the white passenger regarding the seat change, who summoned the air marshal, gate manager, or Port Authority officer to the scene, etc. And although the complaint alleges that the United captain banned plaintiffs from the flight so as to appease their co-passenger, it does not allege facts to suggest that the captain even knew their race at the time he did so. (*See id.* ¶ 11.)

Plaintiffs effectively ask the Court to infer discriminatory intent behind the United captain's actions solely from the fact that he ordered them, but not their white counterpart, off the plane.[4] The Court declines to do. *See Abdullah v. Small Bus. Banking Dep't of Bank of Am.*, 532 F. App'x 89, 91 (3d Cir. 2013) ("That the plaintiff and defendant are different races is not sufficient to plausibly state a claim of racial discrimination."). Plaintiffs' cited authority does not compel a contrary conclusion because the challenged complaints in those cases allege specific facts that plausibly supported an inference of discriminatory intent.[5] *See Wright-Phillps*, 2021 WL 1221111, at *9-10 (Section 1981 claim against United survived motion to dismiss where complaint alleged differential treatment on basis of race, including that flight attendant spoke to

---

Authority officer, or the armed officers were employees or agents of United; nor do they allege any facts that would support an agency relationship.

[4] Plaintiffs argue in their brief that: (i) they and the white passenger engaged in a "dispute" over the window seat; and (ii) the dispute was observed by United employees, who "sided with" the white passenger. (Opp. Br. at 6-7.) But these are legal arguments, which the Court cannot construe as allegations in the complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424-25 (3d Cir. 1997) (district court is "not permitted to go beyond the facts alleged in the Complaint and the documents on which the claims made therein were based" on motion to dismiss).

[5] The Court is equally unpersuaded by plaintiffs' recital of three unrelated (two of them undated) incidents involving aggrieved passengers and seat assignments.

7

Black passenger "with a dismissive and disdainful attitude" and refused to serve her despite her "demonstrable need for help," yet expressed concern for white passenger "who had not shown any need for such concern"); *see also Shebley v. United Cont'l Holdings, Inc.*, 357 F. Supp. 3d 684, 692 (N.D. Ill. 2019) (denying motion to dismiss "somewhat conclusory" Section 1981 claim where complaint detailed specific actions and statements of United flight attendants and captain). The Section 1981 claim is thus dismissed without prejudice.

### ii. Race Discrimination in Violation of NJLAD (Counts 8 and 9)

Plaintiffs also assert causes of action for race discrimination under the NJLAD, specifically N.J.S.A. 10:5-12(f). To state a claim under this section, a plaintiff must allege that: (1) the "defendant operates a place of public accommodation; (2) the plaintiff is a member of a protected class; and (3) he or she was denied equal treatment on the basis of his or her membership in a protected class." *Islam v. City of Bridgeton*, 804 F. Supp. 2d 190, 200 (D.N.J. 2011) (Simandle, J.). As was the case with plaintiffs' Section 1981 claim, it is undisputed that the complaint adequately alleges the first two elements. *See Wright-Phillips*, 2021 WL 1221111, at *13 (finding that "United flight represented a place of public accommodation"). United challenges only the third factor—that plaintiffs were denied equal treatment because of their race.

Here, the complaint alleges "unequal treatment" between plaintiffs and their white co-passenger, as they were removed from the flight while he was allowed to remain. (*See* Compl. ¶ 11.) However, plaintiffs' NJLAD claims fail for the same reasons as their Section 1981 claim. While the actions of non-United employees as alleged—which included, among other things, removing plaintiffs from their flight while yelling threats, and later surrounding them with armed officers—could be considered "outrageous enough to imply a design to discourage [plaintiffs']

8

use of th[e] public accommodation on account of [their] protected status," *Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 431 F. Supp. 3d 518, 531-32 (D.N.J. 2019) (McNulty, J.), there are no allegations which plausibly demonstrate that any *United employees or agents* deprived plaintiffs of equal treatment because of their race.[6] For that reason, the NJLAD claims are also dismissed without prejudice.

### c. Plaintiffs' Common Law Claims (Counts 3, 4, 5, and 7)

United next seeks dismissal of plaintiffs' common law claims on grounds that they are preempted by the NJLAD. It further contends that even if the common law claims are not preempted, they fail under the Rule 12(b)(6) standard.

### i. NJLAD Preemption

The NJLAD provides plaintiffs with all legal remedies available in the common law. *See* N.J.S.A. 10:5-3, A. Nos. 2872, 2118, 2228, c. 12 (1990) ("[T]he LAD is to be liberally construed so that all common law remedies . . . are available to persons protected by the LAD."). "Because of the broad availability of remedies under the LAD, both state and federal courts in New Jersey have frequently held that the LAD bars common law claims based on the same operative facts as underlie the LAD claim." *Everson v. JPMorgan Chase Bank*, 2013 WL 1934666, at *2 (D.N.J. May 8, 2013) (Wolfson, J.) (internal citations and quotations omitted). *See Gaines v. United Parcel Serv., Inc.*, 2014 WL 1450113, at *5 (D.N.J. Apr. 14, 2014) (McNulty, J.) ("Where the factual predicates for the common law claims and the NJLAD claims are the same and the remedies sought are the same, the common law claims are barred." (internal citations and

---

[6] The complaint talks about a supposed air marshal, specifies that the gate manager was off the plane at the time of the passenger's alleged unnerving statements, and says that the Port Authority officer yelled but does not indicate how she ended up on the plane. And as to the captain, the complaint alleges that plaintiffs were told by unnamed persons that he had removed them from the flight. (*See* Compl. ¶¶ 10-11.)

quotations omitted)). Accordingly, only where common law claims would "vindicate particular interests in addition to or aside from those sought to be protected by a LAD action" may they stand alongside NJLAD claims. *Kairawala v. GE Aviation*, 2009 WL 1973509, at *2 (D.N.J. July 7, 2009) (Pisano, J.) (quoting *Shaner v. Horizon Bancorp.*, 116 N.J. 433, 454 (1989)).

The Court disagrees with United's blanket assertion that *all* of plaintiffs' common law claims are preempted because they are "based on the exact same factual assertions and predicates" and "seek the same remedies" as the NJLAD claims. (Mov. Br. at 24.) As explained *supra*, the preemption doctrine requires the Court to engage in a more nuanced, claim-by-claim analysis than United suggests. Notwithstanding, the Court will not dismiss plaintiffs' common law claims on preemption grounds at this juncture because their NJLAD claims have been dismissed without prejudice to file a curative pleading. Should plaintiffs' amended complaint raise a preemption issue, the Court expects that United will argue as much in a renewed motion to dismiss.

### ii. False Imprisonment (Count 3)

Turning to the merits of the common law claims, plaintiffs first assert a cause of action for false imprisonment against all defendants. "The tort of false imprisonment requires (1) a 'detention of the person against his or her will' and (2) 'lack of proper legal authority or legal justification.'" *Wright-Phillips*, 2021 WL 1221111, at *14 (quoting *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 591 (2009)); *accord Bak v. Twp. of Brick*, 1993 WL 21063, at *2 (D.N.J. Jan. 20, 1993) (Fisher, J.) ("The tort of false imprisonment is established upon showing any unlawful restraint upon a man's freedom of locomotion." (internal citations and quotations omitted)).

Here, plaintiffs' allegations regarding their "detention" are murky. The complaint alleges that United and/or the John Doe defendants "directed and otherwise caused [p]laintiffs' physical movements to be kept in custody and/or control of a flight marshal, law enforcement, and/or a United employee while [p]laintiffs [were] removed [from] the plane and into the airport." (Compl. ¶ 38.) As a preliminary matter, there are no facts to support their contention that they were detained by the air marshal; to the contrary, the complaint alleges that the air marshal approached plaintiffs' aisle, "asked if there was a problem," and then "took his seat." (*Id.* ¶ 10.) Reading the complaint indulgently, the earliest plaintiffs' "freedom of locomotion" was "restrained" was at the point the Port Authority officer ordered them off the plane, threatening their arrest; the latest, of course, was when armed officers surrounded them, thereby physically restricting their movements. (*Id.* ¶ 11.) *See Eivich v. E. Greenwich Twp.*, 2021 WL 856883, at *4 (D.N.J. Mar. 8, 2021) (Hillman, J.) (finding that "essential thing" for false imprisonment claim "is the constraint of the person," which "may be caused by threats as well as by actionable force"). These allegations, though barebones, are sufficient at this stage of proceedings to allege a "detention."

However, the law enforcement officers who allegedly detained plaintiffs are not parties to this action, and plaintiffs have failed to establish a factual predicate to support their allegation that *United employees* detained them. There is no allegation, for example, that a United flight attendant threatened plaintiffs or physically restricted their movements, and the sole allegation regarding the captain—*i.e.*, that plaintiffs "were told" the captain had permanently removed them from the flight (*see* Compl. ¶ 11)—is far too removed as alleged to constitute a "detention." Furthermore, plaintiffs' allegation that United employees "directed" or "caused" their detention lacks any factual predicate, as the complaint is bereft of facts suggesting that any United

11

employee played a role in summoning, or otherwise acting in concert with, the officers who allegedly detained them.[7]

Accordingly, the false imprisonment claim is dismissed without prejudice.

### iii. Intentional Infliction of Emotional Distress (Count 4)

To assert a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant acted intentionally; (2) the defendant's conduct was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community;'" (3) the defendant's actions proximately caused the plaintiff's emotional distress; and (4) the emotional distress was "so severe that no reasonable person could be expected to endure it." *Ross v. Los Angeles Produce Distributors, LLC*, 2021 WL 3088253, at *4 (D.N.J. July 22, 2021) (Bumb, J.) (quoting *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988)). Further, "New Jersey courts have found that the emotional distress must meet an elevated threshold which is only satisfied in extreme cases." *Fahnbulleh v. Steneck*, 2018 WL 1610692, at *11 (D.N.J. Apr. 3, 2018) (Salas, J.) (quoting *Sebastian v. Vorhees Twp.*, 2011 WL 540301, at *8 (D.N.J. Feb. 8, 2011) (Irenas, J.)).

United does not dispute that plaintiffs have satisfied the third and fourth elements, as the complaint alleges that its actions "proximately caused [p]laintiffs to experience mental pain and suffering, sleeplessness, paranoia, panic attacks, fear, [and] anxiety," and further alleges that

---

[7] As United points out in its briefing (*see* Mov. Br. at 25-26), at least one Court in this district has declined to hold United liable for false imprisonment under an agency theory in similar circumstances. *See Wright-Phillips*, 2021 WL 1221111, at *14 (that United flight attendants gave information to Port Authority police accusing a passenger of being a disturbance that ultimately led to her arrest was "not enough under [the Second or Third Restatements] to implicate [United] in false imprisonment," reasoning that United "had no authority to direct an arrest, which remained within the discretion and authority of the police").

12

Shan once fainted "due to sleep deprivation from the stress and anxiety caused by the incident." (Compl. ¶ 19.) Instead, United challenges the first two elements—that it acted intentionally and outrageously. To satisfy the first element, "the defendant must intend both to do the act and to produce emotional distress," or must "act[] recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *Mudey v. United States*, 2011 WL 13228440, at *1 (D.N.J. May 10, 2011) (Chesler, J.) (quoting *Buckley v. Trenton Sav. Fund Soc.*, 111 N.J. 355, 366 (1988)). The second element, in turn, requires the plaintiff to allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Witherspoon v. Rent-A-Ctr., Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (Irenas, J.) (quoting *Buckley*, 111 N.J. at 242). In analyzing whether conduct rises to this level, New Jersey courts consider whether the defendant "'occupied a position of authority and power'" over the plaintiff as well as whether the conduct was discriminatory, as "discriminatory conduct is more likely to be considered outrageous." *Wright-Phillips*, 2021 WL 1221111, at *17 (quoting *Taylor v. Metzger*, 152 N.J. 490, 510 (1998)).

Here, plaintiffs allege that United and/or its John Doe employees "acted intentionally recklessly, or both when they accused [p]laintiffs of a crime, misconduct and/or interrupting a flight and caused them to be" removed from the airplane. (Compl. ¶ 43.) But that conclusory allegation lacks any factual basis in the complaint. The complaint alleges that plaintiffs interacted with an air marshal, the gate manager, and Port Authority officers—all of whom have authority over passengers on an airplane—and were eventually ordered off the plane, threatened with arrest, and surrounded by armed officers. This conduct could be considered extreme and outrageous, if, as the complaint alleges, it was motivated by discrimination and not a legitimate

13

reason. However, the complaint does not allege *any* interaction between United employees and plaintiffs; let alone an interaction that could be deemed outrageous.[8] And, as explained *supra*, there are no facts to support the allegation that United employees summoned or otherwise acted in concert with the personnel with whom plaintiffs interacted. Accordingly, the complaint as written fails to allege that United acted intentionally or recklessly, and the intentional infliction of emotional distress claim against it is therefore dismissed without prejudice.

### iv. General Negligence, Common Carrier (Count 5)

Plaintiffs next assert a "general negligence" claim under a "common carrier" theory, which United argues is "a disguised claim for negligent infliction of emotional distress." (*See* Reply Br. at 8; *see also* Mov. Br. at 19-20.) As plaintiffs argue in opposition that their allegations are sufficient to state a claim for either general negligence or negligent infliction of emotional distress (*see* Opp. Br. 9-10), the Court will address both causes of action in its analysis.

### 1. Duty of Care

To assert a negligence or negligent infliction of emotional distress claim, plaintiffs must first allege that United owed them a duty. Airlines such as United are considered "common carriers," which owe their passengers "'the highest possible care consistent with the nature of the undertaking,' including a 'high degree of care for [a] passenger's safety.'" *Wright-Phillips*, 2021 WL 1221111, at *15 (quoting *Ricci v. Am. Airlines*, 226 N.J. Super. 377, 382 (App. Div. 1988)). New Jersey law also imposes a duty on airlines "'to treat their passengers courteously and

---

[8] The complaint does not allege any interaction between the United captain and plaintiffs; rather, it alleges that plaintiffs "were told" of the captain's decision to permanently remove them from the flight. (Compl. ¶ 11.) Plaintiffs have not provided the Court with case law regarding what constitutes outrageous conduct, or law that such far removed conduct meets the mark.

14

respectfully'—to maintain the friendly skies, as United's old advertisement would have it." *Id.* (quoting *Ricci*, 226 N.J. Super. at 382). In the negligent infliction of emotional distress context, the duty element has an additional requirement: "[t]hat the defendant could foresee that his actions would cause 'fright or shock severe enough to cause substantial injury in a person normally constituted.'" *Id.* (quoting *Gupta v. Asha Enterprises, L.L.C.*, 422 N.J. Super. 136, 151 (App. Div. 2011)).

Plaintiffs largely parrot the common carrier standard described above, alleging in the complaint that United owed them a duty to "use the utmost caution to protect its passengers, or the caution that would be used by a very careful and prudent person." (Compl. ¶ 50.) They further allege that United knew of "multiple prior incidents of racial discrimination on [its] flights," and thus knew its policies and practices "created a substantial and unjustifiable risk that non-White customers would be subject to denial of services; markedly hostile conduct; racial profiling; unwanted, offensive and unlawful false imprisonment or confinement against one's will; malicious harassment; false-light publicity; and intentionally, recklessly, or negligently caus[ing] extreme and severe emotional distress." (*Id.* ¶¶ 52, 53.) These allegations are painted in such broad strokes that they fail to outline the contours of United's alleged duty.

New Jersey courts have imposed broad duties on common carriers. For example, courts have recognized a duty to protect passengers from the "abusive and insulting" treatment of the carrier's employees. *See Ricci*, 226 N.J. Super. at 382-83 (where flight attendant admonished passenger and threatened FBI involvement and "the embarrassing relocation of his seat although he did not precipitate the problem" with a co-passenger, court held that American Airlines had duty to protect passenger from "abusive and insulting" treatment of its agents). They have also recognized that common carriers owe a duty when their agents summon law enforcement "to

15

handle passengers." *Wright-Phillips*, 2021 WL 1221111, at *15. Here, the complaint alleges that plaintiffs were confronted by an air marshal and the gate manager on a United flight, ordered to deplane by a Port Authority officer (who also threatened them with arrest), and surrounded by armed officers—treatment that could be considered "abusive and insulting" if, as alleged, plaintiffs did nothing to prompt it. However, other than alleging that plaintiffs were told the United captain decided to permanently remove them from the plane, the complaint is silent as to the specific role he or any other United employee played in the incident. The Court has already explained this defect in Sections III(b), (c)(ii), and (c)(iii), *supra*, as it relates to other causes of action and will not belabor the point. In short, the Court cannot find that United owed a duty of care to protect plaintiffs from the actions of unrelated third parties under the circumstances alleged. The negligence claim is therefore dismissed without prejudice.[9]

### v. Negligent Hiring, Training, Supervision, and Retention (Count 7)

Finally, plaintiffs assert a cause of action for negligent hiring, training, supervision, and retention. Specifically, they allege that United had a "duty to exercise reasonable care in the hiring and makeup of its workforce" to protect plaintiffs and other invitees "against unlawful denial of services; markedly hostile conduct; racial profiling; unlawful false imprisonment or confinement against one's will; malicious harassment; and intentionally, recklessly or negligently caus[ing] extreme and severe emotional distress," but that it "failed to exercise such

---

[9] Should plaintiffs choose to amend their negligence claim, the Court expects that they will clarify the contours of the duties United owed to plaintiffs and further allege how United breached them. *See Wright-Phillips*, 2021 WL 1221111, at *15 (plaintiffs asserted two distinct duties on behalf of United: duty to "reasonably accommodate [plaintiff's] anxiety problem" and duty to exercise power to call police on passenger "with care"). In turn, any renewed motion to dismiss filed by United must address whether the duties alleged exist under New Jersey law.

care with respect to its employees and agents whose conduct is described" earlier in the complaint.  (Compl. ¶¶ 57-58.)

A claim for negligent hiring, supervision, or retention, requires the plaintiff to plead facts demonstrating that: (1) the employer—here, United—"knew or had reason to know of the particular unfitness, incompetence, or dangerous attributes of the employee," (2) it "could reasonably have foreseen that these qualities created a risk of harm to other persons," and (3) "the employer's negligence and the employee's unfitness or dangerous characteristic proximately caused the injury."  *Hoffman v. Silverio-Delrosar*, 2021 WL 2434064, at *3 (D.N.J. June 15, 2021) (Vazquez, J.) (internal citations and quotations omitted) (applying standard to negligent hiring and supervision claim); *see Maddox v. City of Newark*, 50 F. Supp. 3d 606, 636 (D.N.J. 2014) (McNulty, J.) (applying same standard to negligent hiring and retention claim).  Although courts typically apply the same standard to negligent training claims, others have articulated four distinct elements a plaintiff must satisfy to establish such a claim: "(1) the defendant owed a duty of care to the plaintiff to properly train its employees, (2) defendant breached that duty of care, (3) defendant's breach was the proximate cause of plaintiff's injury, and (4) defendant's breach caused actual damages to plaintiff."  *Brijall v. Harrah's Atl. City*, 905 F. Supp. 2d 617, 621 (D.N.J. 2012) (Irenas, J.).

Here, plaintiffs have not alleged that any United employee was unfit to perform his or her duties, let alone that United "had reason to know" of that unfitness; nor have they alleged that any United employee had dangerous qualities that could foreseeably create a risk of harm to passengers.  *See Hoffman*, 2021 WL 2434064, at *4 (dismissing negligent hiring, supervision, and training claim against Uber and parent company where plaintiff failed to offer any "specific allegations to support this claim" and did not "even allege that prior to the current incident,

17

[defendant] was unqualified or unfit to be an Uber driver"); *see also Conserve v. City of Orange Twp.*, 2022 WL 1617660, at *6 (D.N.J. May 23, 2022) (Wigenton, J.) (dismissing negligent supervision and training claim where plaintiffs failed to "specify how and in what way" defendant knew or had reason to know of employee's alleged unfitness). Furthermore, putting aside the fact that plaintiffs have not adequately alleged a lack of training, there are no facts from which the Court could infer that plaintiffs' emotional distress was proximately caused by their interactions with an untrained United employee. These defects necessitate dismissal of the negligent hiring, training, supervision, and retention claim.

## V.     Conclusion

For the foregoing reasons, United's motion (D.E. 5) is granted. Count 2 of the complaint is dismissed with prejudice, and the remaining counts are dismissed without prejudice to file an amended complaint within 30 days. An appropriate order will issue.

Date:  September 30, 2022                           /s/ Katharine S. Hayden
                                                    Katharine S. Hayden, U.S.D.J.